A. L. v. Walt Disney Parks Good morning, Mr. Degale. Good morning, Your Honor. Thank you. To the police, the court, I'm Andy Degale representing the appellant here, A. L. through his mother, D. L., who I think is listening in now. Your Honor, the problem I have with your case, Mr. Degale, the statute, as we've interpreted it, requires a plaintiff to show three things. One, that there's been a failure to make reasonable accommodations. Two, the necessary showing. And three, the fundamentally altered showing. Three different things. The district court found that you failed to prove all three. And I've read your brief, and I've looked at your reply brief too, and your opponent points out that you've not made an argument for why the district court was wrong about the first showing that you have to make. That is, the failure to make reasonable modifications. And that reasonableness determination, that the request of accommodation was not reasonable, that was the determination of the district court. Your failure to make an argument about that means you haven't attacked all the grounds. And it seems to me we have no choice but to affirm here. Your Honor, if the reasonableness issue is intertwined, there are some authorities for the proposition. I'm sorry? These are three separate things, and the district court addressed them as three separate things. And our precedents say those are three separate things. Indeed, they are distinct issues, Your Honor. There are some authorities for the proposition that the issues of reasonableness and the affirmative defense of fundamental alteration, at least the evidence that submitted us to those two issues, is intertwined. That is, whatever change you're requesting, you will examine its reasonableness in the context of defendant is fundamental alteration. What's requested for the benefit of the plaintiff is reasonableness. The evidence is often the same. In this instance, Your Honor, the arguments that are raised about fundamental alteration overlap greatly with reasonableness. Specifically, for example, it's pointed out in the briefing that there was no evidence offered regarding the impact of A.L.'s requested change on Disney or anybody. That is, there was no evidence offered by Disney regarding the impact of this request. That is, all he asked for was a few additional passes. The only evidence about what he requested was actually favorable to him and would show that well. That is, Disney's experts, as I understand it, determined that it was not reasonable because basically the alternative was to go back to the system that Disney had administered before and had been the subject of widespread abuse. You don't make an argument in your brief about why that's wrong. Your Honor, this brief focuses on this overlap with fundamental alteration and reasonableness. You make arguments about the findings that relate to the necessary modification component, but that is separate. I mean, the district court's rationale for why it was not reasonable accommodation. You don't make an argument about it. Yes, Your Honor. As I was indicating, because the evidence overlaps, the court has to consider, I hope, the discussion that's offered about fundamental alteration because, for example, there is demonstrated there that the only evidence about the impact of A.L.'s request was Disney's own expert saying accommodating him individually would not be a problem, and that's a quote from him. If Disney's expert admits accommodating A.L.'s request individually would not be a problem, there's no reason to go any farther. That's an admission that it's reasonable. He hasn't asked for anything, and there were other individuals who testified that they were given the same relief as Colonial Williamsburg points out. There was no deluge of requests like that. So, reasonableness is examining... Mr. Gagali, Colonial didn't have 55,000 people come to their restaurant every day. The case is distinguishable. That's true, Your Honor. The concept raised was, and I think that's why the district court appeared to place more value in the dissent in Colonial Williamsburg than the majority, but there was no proof here. This idea that because we have 55,000, it's automatically going to... We have to extrapolate the impact created by A.L. about which there was no evidence over a broad universe of people about which there was no evidence. That is, there was discussion of how many DASs there are, but Your Honors, the DAS system includes a lot of people that are not like my client. They don't have cognitive impairments. It includes folks that have diabetes, debilitating conditions that prevent them from maneuvering around the park, blind people, deaf people, other kinds of disabilities are included within the DAS. The court below took no evidence about the impact of A.L.'s request. It was a reasonable one because there was no impact. Disney said it wouldn't be a problem, then extrapolated that over a universe that was undefined. There's no way to know how many people there actually are that would constitute whatever the floodgates might be. Well, you're arguing over how long is a piece of string. Are you saying that it's entirely irrelevant what effect awarding these accommodations to this particular plaintiff has on the business of Disney, that that's not a consideration in all the circumstances? But admit that this case is different than Martin and the colonial case because they both referred to a handful of accommodations. We're not talking about a handful. Even if you take your number here, it's going to be 500 or more persons a day. Is that irrelevant to the consideration? Not completely irrelevant. All right. So what's its relevance? You know, the relevance, the irrelevance here is that this, whether it's 500, should be critical. Whether those people are actually, those 500 are actually going to ask for the same relief should be critical. It is the records replete with evidence that not all people like A.L. request the same modification. Some ask for 10 reads. Some ask for less. A couple ask for more. Different parks require different accommodations as well. Whether A.L. comes back in the future on a weekday versus a weekend determines how he will be treated that day. And there's no analysis of, well, how likely are the people that are going to come back and constitute the floodgates going to be coming on the same type of days or on holidays or analysis? There's also no discussion of, for example, folks that live out of town, the vacation destination types that might only come once a year or less, whereas A.L. lives very close to the park and goes frequently. Perhaps he makes a greater impact on the park, but there's no analysis of whether there are others like him. It's simply the idea that give it to him, we've got to give it to everybody. There's no definition of everybody, and there's not exactly a give it. Now, your honors, if I may, in the last minute. One of the things the district court said was that your client was capable of understanding time, deferring gratification, and deviating from his routine, that he in fact did that in his 2013 visit and admitted to doing it on other occasions. It seems to me that that alone would require affirming the district court. I understand, your honor. The arguments in opposition to that approach are briefed fully, I believe. They relate to evidentiary rulings that were made by the court. Essentially, all the evidence that would go to those issues was, most of the evidence anyway, was barred from being admitted. Your honors, if I may, and if this runs over a second or two, I beg indulgence and we'll lead up some rebuttal time. I only very, very recently learned that I have a duty of disclosure from some US Supreme Court opinions, even if I don't have actual factual knowledge, meaningfully. The court may have read some about this, but as we understand it, there was a news release about a month ago that Disney is doing away with the fast pass program, which is a big part of everything we're arguing about here, and that it is implementing enhancements to the DAS program. I don't know what that has to do with what things that are occurring in the news media that are outside the record here have to do with our review of whether the district court heard here. That's fine. I just, your honors, I just understood that I have a duty to disclose things that might now, the new system may actually give the plaintiff some of what he asks for. So in any event, thank you, your honors. I appreciate the time. Okay. Mr. Scanlon. Thank you, your honor, and may it please the court. My name is Kerry Scanlon and I represent the FOE. My opponent says that the evidence is the same or very interrelated between the reasonableness prong and the necessity prong, and that's just not true. If you read this court's opinion in AL1, which is 50 pages long, almost all of the opinion dealt with the necessary prong and there were what the court called disputed characteristics of severe autism. All of that evidence goes to whether or not AL was able to use the benefits of DAS, and it goes into expert testimony by experts about autism. The court is very familiar with that decision. The reasonableness argument, which the court addressed in a couple of paragraphs at the end of this decision, is a completely different standard. It looks at all of the circumstances and it doesn't really focus on the disability of the plaintiff at all like the necessary standard does. And so, Chief Judge Pryor, I think you're absolutely right that under the SIPOPA decision of this court, he didn't make any argument in his brief about one of the independent grounds of the judgment. And under that decision, the judgment has to be affirmed because it was an independent ground. I mean, that case even said that if you made an argument in the reply brief, it was too late, too little, too late. And that didn't even occur here. There was no mention about that. The word only appears in a title, but he never makes any argument, never cites any cases or anything like that. Never addresses the district court's rationale for why the accommodation was not reasonable. That's right. And the district court actually devoted some considerable time to reasonableness inquiry. And what she talked about in there was different than the necessary inquiry. And so it is an independent ground. And as Your Honor pointed out correctly, he has the burden of proof on that. He has the burden of proof on the necessary. We have the burden on the fundamental alteration. I would ask, however, Your Honor, to consider if this court affirms to do so on all three grounds, because it seems to me that if we do so, we're just, I mean, it's almost like an advisory opinion, right, where he's basically defaulted or abandoned a necessary challenge that he has to make it. Even if we were, I mean, we could do it as an advisory opinion, I can guarantee you that. But why spend the resources when we have to reach the same judgment anyway? Well, I understand the issue of resources, Chief Judge Pryor, but in terms of resources for the judicial system and the parties in this case, there are at least 40 other cases out there pending. And this is the first case that we have a complete trial record before the court. And it would be very useful in terms of efficiencies and judicial resources to do it in the alternative so that there is an affirmance specifically on the fundamental alteration defense and on the necessary inquiry, because that will help the lower court in Florida. There are cases, related cases, that Mr. Degali has filed in California, and those are currently on appeal to the Ninth Circuit. So there have been a lot of courts and a lot of judges here who've expended a lot of time and would have to going forward if this court only based its affirmance on what Mr. Degali, I'm sure, will later call as a technical ruling on not having made an argument. And it's very important, Your Honor, because Judge Conway's decision in this case is extremely detailed. It's even-handed. She looked at both sides and she described the disabilities that AIL has in a very fair way. But that decision, Your Honor, I would say is the most comprehensive treatment of autism that I am aware of in a theme park environment. And it's very valuable to the courts that are having to decide these remaining cases. If I might, Your Honor, I would like to also address the question that Judge Watkins asked about the number. Mr. Degali says that the DAS guests do not constitute 3% of the guests in the park. It's only 1%. But that's not true. He doesn't cite any evidence in the record. He didn't object during the trial to the testimony of two witnesses who said it was 3%. And the problem with his 1% is that's the number of DAS cards issued. But each DAS card that's issued may have an average of four or five people in the DAS party. And also once a card is issued on a Monday, they may use it every day of the week. And so that's what pushes the number up to 3% or 4%. He never objected to the is there are about three or 4,000 people per day at Walt Disney World who benefit from DAS. That is their DAS cards and their members of those DAS parties. And so that's what we're talking about in terms of the impact. And if I could just briefly discuss the issue of whether or not this should apply going forward. He argues that it should only apply based on the impact of AL getting this type of relief. But this is inconsistent with the case law. In Martin, the Supreme Court said that it referred to the handful of requests that they might receive in the future. Obviously, the court was looking at things other than the accommodation provided to Mr. Martin himself. So even though the number in that case was very low, which is why the court found there was no fundamental alteration, they looked at the issue going forward. And Colonial Williamsburg said the tavern had not been deluged with similar requests and that future requests for relief would only be occasional. The same thing in Fortune versus AMC, where they said the events that led to the complaint were exceedingly uncommon. Now, this court on the first appeal took the same approach. Each member of the panel stated that any injunction would not be limited to the 30 cases, but would have to apply to DAS going forward generally. Judge Hall said, we have to go beyond just these 20 plaintiffs or 30 plaintiffs. We have to look at the whole part. And so all of these cases stand for the proposition that you can now- Are you quoting from what she said in oral argument? I am quoting from what she said in the oral argument, Your Honor. It's clear from the opinion as well that, and one reason the oral argument was different here, Your Honor, is because it was on a motion for summary judgment. So they weren't talking about the remedy when they ruled on that in the opinion. But the practical reasons for this rule are clear. The employees at Disney are not equipped, nor are they permitted by law to inquire about the nature or extent of a person's disability in order to determine what level of accommodation is appropriate. And if people came and found out about an injunction in one of these individual cases, they would ask for the same thing and they would sue Disney if they didn't get it. As I mentioned, there are already over 40 to 50 lawsuits already filed against the company. And as the court held in the recent NORAD decision, Disney cannot be expected to treat other DAS guests who state they have the same type of disability and the same need for accommodations differently than was done in an injunction in an individual case. Even A.L.'s mother, Your Honor, D.L., said, pointing to the district court, because the requested relief when applied to the DAS program overall would significantly increase the wait times for 97% of the guests and would lead to the same kind of fraud and abuse that existed under the former GAC system, that relief would work a fundamental alteration just as the district court ruled. And so what you have is you've got a very strong record on the necessary inquiry that when the court sent that back, it wanted more attention to the medical issues. The plaintiff did not offer Tim an expert on autism at the trial. And they attempted to do so, but the evidentiary rulings in this case were entirely proper. They waited too long and tried to do things at the 11th hour. And so Dr. Kelderman's testimony, which is described in detail in the district court's opinion, was extremely detailed about his ability to wait, his ability to defer gratification, and his ability to deviate from the alleged list of rides that he said he had to go on in exact order. The trial proved that that just wasn't the case. And so again, both on the necessary prong and on the fundamental alteration prong, the evidence was overwhelming. And as the district court said, in each case where we used an expert on the alternative... Well, it seems to me the necessary... If we were to affirm to as an alternative matter on the necessary modification component, it's all very fact-bound as to this particular plaintiff, that that particular showing is always going to be that way. I'm at a loss to understand how helpful that is in terms of providing guidance. Yes, each person is different, Your Honor. But in terms of the types of disabilities they claim, many other plaintiffs have said the same thing. And we've taken discovery, obviously, in all of these cases, and there's a record. And I can tell you that there are certain similarities that a ruling on the necessary inquiry in this case would have specific application to many of the other cases and would be extremely helpful to both the parties, I think, and the courts. So it's true that each person is different, but in terms of the range of disabilities and how it's impacted in a theme park, DAS as a program really provides an accommodation for those with severe impairments and those for mild impairments. It covers the whole range. It's enough to cover everything. And even though there may be differences, the point of the court's below would apply if it's affirmed by this court to many of the other cases. And I would ask the court to do that. And the same with the fundamental alteration defense, which is going to be very important. Judge Conway right now has 29 remaining cases because this is the only one so far that's trial. And those are important decisions to have a firm because the issues that came up in the trial in this case are going to come up in the other cases. And it would be a waste of judicial resources. I think your honor to have to try all of these cases all over again, when the issues are very similar. And if there are distinctions between this case and the facts of another case, the court could instruct the district court on remand to consider those. But many of the issues I think would be very similar. You don't want to read that. No, we don't want to remand. We want an affirmance. But in terms of the courts, how the court expresses that affirmance, just in terms of the impact on other cases. No, we clearly want an affirmance of the judgment. Wouldn't that just be an advisory opinion that we would be giving on these other future cases that are pending before a district court judge? We're not asking Judge Lagoa to issue to say anything about the other cases. We're simply saying that on the record before the court in this case, affirming on all three grounds, all three statutory inquiries would be very important to the other cases. I guess Judge Conway knows what she's doing and a very fine district judge. And unless we tell her that she's done something wrong, she's going to keep proceeding the way she has. Very well, Your Honor. And I know I can't give much time back, but I do have a minute. And unless the court has any other questions. You could have given back more time, but I'll take the minute. Thank you. Thank you, Mr. Scanlon. Mr. Degale, you've got five minutes. Thank you, Your Honor. See, there is not an absence of evidence regarding reasonableness, nor is it totally absent of argument. The section of the brief that addresses reasonableness and necessity together. But the district court addressed them separately and you didn't address that rationale at all. You used it. Your opponent's exactly right. You used necessary and reasonableness, both in the title of that section of your brief, but then everything you addressed under that heading went to the necessary finding. Well, I asked the court to consider arguments raised as the fundamental alteration as in connection with the reasonableness issue, simply because facts and evidence supporting or addressing those two issues, while the issues are distinct, overlap. And in this instance... But the district court rationale did not overlap. It made a separate finding about reasonableness and you didn't make a separate argument about why that finding was wrong. I understand, Your Honor. I'm asking you to consider the argument with respect to fundamental alteration as to that issue. In so far as two things happened as to reasonableness, that section does discuss at length a series of considerations the judge took into account in her reasonableness analysis, apparently, that I have referred to as sort of a punitive analysis of these issues. It's addressed as a punitive analysis of necessity. It's, in this instance, the same with respect to reasonableness in so far as, for example, his request was deemed to have been... She deemed his request unreasonable and unnecessary for the reason that the members of his party didn't go out as a scout team, and his mother didn't, and his mother didn't pre-plan, and he had deviated from a pattern before. Your Honors, I separately agree with the court or would hope to encourage the court not to affirm all these issues that would flow from... If the court does not appreciate the case in chief appeal, there is no reason to give an advisory opinion regarding the affirmative defense. Judge Conway didn't need to do that. She didn't need to after... Well, a good district judge will have a trial and make findings about everything, so they don't have to see the case again. In this instance... If I were Judge Conway, I would have dealt with this, I hope, the same way. I think that's precisely the right way to deal with it. In the same fashion that I felt obliged to bring up future off-the-record changes, counsel brought up outside the record these other cases that are pending. Yeah, and we cut her off about that. Thank you, Your Honors. Thank you. I have nothing further. Thank you. Okay, we'll move to the last case. Thank you.